IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| Darwin Krenz and Jean Krenz, | ) | |
| | ) | |
| Plaintiffs, | ) | **ORDER GRANTING PLAINTIFFS'** |
| | ) | **MOTION FOR REMAND** |
| vs. | ) | |
| | ) | Case No. 4:11-cv-006 |
| XTO Energy, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is the Plaintiffs' motion for remand filed on January 28, 2011. See Docket No. 5. The Defendant filed a response in opposition to the motion on February 14, 2011. See Docket No. 18. For the reasons outlined below, the motion is granted

## I.  BACKGROUND

The Defendant, XTO Energy ("XTO"), is a Delaware corporation with its principal place of business located in Fort Worth, Texas. The Plaintiffs, Darwin and Jean Krenz, are North Dakota residents who own a surface estate in certain real property located in Williams County, North Dakota.

In April of 2007, the Krenzes entered into a pipeline easement agreement with Headington Oil ("Headington") which conveyed unto Headington a right-of-way and easement permitting Headington to construct a pipeline to transport oil and gas across a portion of the Krenzes' real property in Williams County. See Docket No. 1-1, p. 6. The pipeline easement has an effective date of April 26, 2007, and permits the construction of one pipeline within the surveyed right-of-way.

The subject property is described as follows:

Township 154 North, Range 95 West
Section 9     E1/2
Section 10    W1/2SW1/4, SE1/4SW1/4
Section 15    NW1/4, W1/2NE1/4, N1/2S1/2, S1/2SE1/4, SE1/4SW1/4

See Docket No. 1-1, p.6.

In 2008, Headington assigned its rights in the pipeline easement to its affiliate, Nesson Gathering System, LLC ("Nesson"). Shortly thereafter, XTO acquired certain assets from Headington, including Nesson. In the fall of 2008, a pipeline was constructed across Section 9. This pipeline originates in Section 21 and runs north through Sections 16 and 9 until it joins an east-west pipeline on the northern edge of Section 9.[1] See Docket No. 1-2, p. 47. There also appears to be a separate pipeline easement covering the eastern half of Section 9 dated October 24, 2008. See Docket No. 1-2, pp. 30-34.

In 2010, XTO contacted the Krenzes to request a pipeline easement across the Krenzes' property. XTO is in need of a pipeline to its Ward Well located in Section 23 and three additional wells located on federal land to the south known as the Southern Wells. See Docket Nos. 1-1, p. 7 and 19. During negotiations, XTO discovered that Nesson, which XTO had recently acquired, owned the pipeline easement at issue. It is the position of XTO that the pipeline easement Headington obtained in 2007 provides the necessary authority to construct the planned pipeline across the Krenzes' property to the Ward Well and the Southern Wells. Consequently, XTO terminated negotiations in late 2010 and informed the Krenzes it intended to proceed with construction of the pipeline.

---

[1] There is another pipeline easement between the Krenzes and Headington with an effective date of February 23, 2007, which applies to the northern boundary of Section 9 and appears to apply to this east-west pipeline. See Docket No. 1-2, p. 26.

The Krenzes contend the 2007 pipeline easement is a void and unenforceable blanket easement prohibited by N.D.C.C. § 47-05-2.1.  In the alternative, the Krenzes argue the 2007 pipeline easement in question is limited to a single pipeline which has already been constructed across Section 9.

The Krenzes filed the current action against XTO on or about December 23, 2010, in Williams County District Court.  See Docket No. 1-1.  The Krenzes filed a motion for a preliminary injunction, which would enjoin XTO from construction of the proposed pipeline, on or about January 11, 2011.  See Docket No. 1-2.  XTO removed this action to federal court on January 18, 2011.  See Docket No. 1.  The jurisdictional basis for removal was diversity of citizenship.  28 U.S.C. § 1332.  The Krenzes filed their motion for remand on January 28, 2011.  See Docket No. 5.

## II.     LEGAL ANALYSIS

The Krenzes argue that removal was improper because the amount in controversy does not exceed $75,000 as required by 28 U.S.C. § 1332(a).  XTO argues the amount in controversy is far in excess of $75,000.

Following removal of a case to federal court, a plaintiff can seek remand of the action back to state court.  28 U.S.C. § 1447(c).  The removing party bears the burden of showing that removal was proper.  Nagel v. Wal-Mart Stores, Inc., 319 F. Supp. 2d 981, 982 (D.N.D. 2004) (citing In re Bus. Men's Assururrance Co. of Am., 992 F.2d 181, 183 (8th Cir. 1993); Capehart-Craeger Enters., Inc. v. O'Hara & Kendall Aviation, Inc., 543 F. Supp. 259, 262 (W.D. Ark. 1982)).  "Removal statutes are strictly construed in favor of state court jurisdiction."  Id. (citing Bus. Men's, 992 F.2d

at 183). All doubts concerning removal must be resolved in favor of remand. Id. at 983 (citing Bus. Men's, 992 F.2d at 183).

Federal district courts have original jurisdiction of all civil actions between citizens of different states where the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a)(1). Whether a plaintiff satisfies the $75,000 amount in controversy requirement is a jurisdictional issue for the court to decide. Nagel, 319 F. Supp. 2d at 983 (citing Trimble v. Asarco, Inc., 232 F.3d 946, 959 (8th Cir. 2000)). If the value of the claim is less than $75,000, the complaint must be dismissed or the case remanded. Id. (citing Trimble, 232 F.3d at 959). If the amount in controversy is in dispute, the party opposing remand must prove the amount exceeds $75,000 by a preponderance of the evidence. Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009).

In this case the amount in controversy is not capable of easy determination. The Krenzes do not seek money damages. Instead, their action is one for declaratory relief. See Docket No. 1-1. Specifically, they seek a declaration that the 2007 pipeline easement is invalid. In the alternative, they ask for a declaration that the 2007 pipeline easement is limited to a single pipeline which has already been constructed.

The Krenzes argue the amount in controversy should be determined from the plaintiffs' viewpoint. They claim the amount in controversy is far below $75,000. In support of their argument, they submitted the affidavit of Courtney Krenz which states the Krenzes had agreed to accept $28,936.90 in compensation for the easement XTO sought. See Docket No. 7.

XTO argues the amount in controversy is far in excess of $75,000. In support of its argument, XTO has submitted the affidavit of XTO Landman, Teresia McGinnis. See Docket No. 19. McGinnis states in her affidavit that XTO stands to lose in excess of $86,000 a month in

revenues if it is forced to flare gas from the well the proposed pipeline would serve. McGinnis also states that when the parties ceased negotiations in 2010 the Krenzes' demands totaled several hundred thousand dollars.

The Krenzes position as to the proper measurement of the amount in controversy is correct. "In a suit for declaratory or injunctive relief the amount in controversy is the value to the plaintiff of the right that is in issue." Usery v. Anadarko Petroleum Corp., 606 F.3d 1017, 1018 (8th Cir. 2010); see also James Neff Kramper Family Farm P'ship v. IBP, Inc., 393 F.3d 828, 833 (8th Cir. 2005) (stating the amount in controversy is measured by the value of the object of the litigation); Advance Am. Servicing of Ark., Inc. v. McGinnis, 526 F.3d 1170, 1174 (8th Cir. 2008) (applying circuit rule that amount in controversy must be determined from plaintiff's perspective). This principle is known as the "plaintiff's viewpoint rule." Usery, 606 F.3d at 1019. The object of the suit in Usery was a mineral interest to which the plaintiffs sought to quiet title. Id. at 1018. The Eighth Circuit explained in Usery that the district court needed to determine the fair market value of the mineral interest at issue. Id. at 1019. In James Neff Kramper Family Farm P'ship v. IBP, Inc., the object of dispute was a continuing trespass caused by an air monitoring device and water well which had been placed in a farmer's field. 393 F.3d at 830. The Eighth Circuit held the amount in controversy was the value of the land which was affected by the trespass. Id. at 833.

XTO argues the Court should consider the cost to the defendant in determining the amount in controversy. See Bergstrom v. Burlington, 895 F. Supp. 257, 262 (D.N.D. 1995) (applying defendant's viewpoint rule). However, the Eighth Circuit has recently and specifically stated that "we have never endorsed this rule." Usery, 606 F.3d at 1019. The holding in Usery, IBP, and

McGinnis make it clear that the plaintiff's viewpoint rule must be applied. Applying the plaintiff's viewpoint rule excludes consideration of XTO's flaring costs.

The dispute in the present action is the validity and scope of the 2007 pipeline easement. Since the 2007 pipeline easement is the object of the suit, it seems rather clear to the Court that the amount in controversy is the amount paid by Headington to the Krenzes for that easement.[2] The record does not reflect how much Headington paid for the easement, although this figure is obviously known to both parties.

XTO argues that if the Krenzes prevail in having the pipeline easement in question declared invalid, XTO will have to negotiate a new easement with the Krenzes who, according to the McGinnis, demanded several hundred thousand dollars before negotiations ended. But this argument fails in that it attempts to bootstrap XTO's potential costs into the calculation of the amount in controversy. The lawsuit the Krenzes filed relates to the 2007 pipeline easement. As XTO admits in its brief, the Krenzes would be under no obligation to negotiate a new pipeline easement if the 2007 pipeline easement is declared invalid. See Docket No. 18, pp. 10-11. On the other hand, the Krenzes can make whatever demands they want but their subjective valuation is not controlling either. Usery, 606 F.3d at 1019. Unanswered by XTO is how much it is willing to pay for the easement. However, a new pipeline easement is simply not the object of the suit now before the Court, and the potential costs to XTO of losing the suit are not the proper measure of the amount in controversy. The actual present market value of the easement in question is what must be ascertained.

---

[2] The Court recognizes that the present value of this easement may be somewhat higher than what was paid in 2007.

If the pipeline which XTO hopes to construct had already been constructed and the Krenzes had sued for trespass, the measure of the amount in controversy would be the value of the land directly affected by the trespass. IBP, 393 F.3d 828. The affidavit of Courtney Krenz states that Darwin Krenz and Jean Krenz agreed to accept $28,936.90 for a pipeline easement which would have accommodated the pipeline XTO desires to build. See Docket No. 7. Courtney Krenz's affidavit reflects a value of $35 per rod for the easement. In 2008, the Krenzes were compensated $8,253.50 by XTO ($25 per rod), for an easement across the eastern half of Section 9. See Docket No. 1-2 p. 31. The record does not reveal what the Krenzes were paid for the 2007 easement in question or the current market value of that easement. Also not reflected in the record is the book value afforded the easement in question when XTO acquired Nesson from Headington in 2008. Nor has an independent appraisal been undertaken.

Doubts as to federal jurisdiction must be resolved in favor of remand to state court. Usery, 606 F.3d at 1020. The Court has searched the record and finds that XTO has failed to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $75,000. Accordingly, the Court finds it lacks jurisdiction and a remand to state court is required.

### III.     CONCLUSION

For the foregoing reasons, the Plaintiffs' motion for remand (Docket No. 5) is **GRANTED**. The matter is **REMANDED** to the Williams County District Court.

**IT IS SO ORDERED.**

Dated this 15th day of March, 2011.

                                                   */s/ Daniel L. Hovland*
                                                   Daniel L. Hovland, District Judge
                                                   United States District Court